UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRIAN S. BROWDER,

          Petitioner,

     v.                                     14-CV-17(LJV)
                                                 10-CR-263(LJV)

UNITED STATES OF AMERICA,

          Respondent.
_____

## DECISION AND ORDER

Pending before this Court is Brian Browder's pro se petition seeking relief pursuant to 28 U.S.C. § 2255.

## BACKGROUND

On October 20, 2010, Browder pleaded guilty to possession of child pornography in this Court before Hon. Richard J. Arcara.  Docket Item 16.[1]  On May 10, 2011, Judge Arcara sentenced Browder to 78 months in prison and 10 years of supervised release with special conditions.  *See* Minute Entry dated May 10, 2011.  The judgment was filed on May 31, 2011.  Docket Item 43.

Browder appealed from the judgment, Docket Item 44, arguing that "(1) the waiver of his right to appeal his sentence, as laid out in writing in the plea agreement, was misleading and is therefore not enforceable; and (2) the sentence was substantively unreasonable because it (a) was based upon sentencing guidelines of 'uncertain provenance,' and (b) was based upon a misunderstanding of Browder's

_____

[1] All record citations are to the criminal docket, 10-cr-263.

likelihood to molest children in the future." *United States v. Browder*, 499 F. App'x 74,

75 (2d Cir. 2012) (Summary Order).  In dismissing the appeal, the Second Circuit noted:

> [E]ven if the wording in the plea agreement were insufficient to inform
> Browder of his rights, the District Court carefully reviewed the plea
> agreement with Browder, explaining what the waiver of appellate rights
> entailed in layman's terms.  Browder indicated that he understood both the
> waiver and the Court's words, and reaffirmed his agreement to waive his
> right to appeal.  The record clearly indicates that Browder's waiver was
> knowing and voluntary, and that it was therefore effective to waive his right
> to appeal his within-Guidelines sentence.
>
> Because we determine that Browder's waiver of his right to appeal a
> within-Guidelines sentence is enforceable, we do not address his
> argument that his sentence was substantively unreasonable.

*Id.* at 76.

Browder filed the instant motion before Judge Arcara on December 31, 2013.

Docket Item 62 at 13.[2]  A month later, he filed additional briefing in support of the

motion.  Docket Item 65.  On March 3, 2014, the government responded.  Docket Item

67.  And on April 7, 2014, Browder filed a reply.  Docket Item 70 at 27.

On December 4, 2015, this matter was reassigned to me from Judge Arcara, and

about three weeks later, Browder was released from prison.  On January 4, 2016,

Browder filed an "Emergency Application for Appointment of Counsel."  Docket Item 79.

In that application, Browder stated:  "Two years have passed since the initial filing [of

the § 2255 motion], and I have now completed the illegal sentence and begun

supervised release."  Docket Item 79.  According to Browder, the conditions of

---

[2] Pinpoint citations are to the page numbers added at the top of electronically filed
documents.

supervised release "impair [his] access to the courts and so threaten [his] due process

rights, and also subject [him] to 'therapy' and polygraph exams, [his] participation in

which will surely be misconstrued due to presumption of guilt and presumption of sexual

proclivity and context, and then used again [him]."  *Id.*

Since then, Browder has appeared before this Court a number of times in

connection with alleged violations of his conditions of supervised release.  *See*

W.D.N.Y. Docket No. 10-cr-263.[3]

## DISCUSSION

### I.   RELIEF UNDER 28 U.S.C. § 2255

Browder seeks relief under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to impose such sentence,
> or that the sentence was in excess of the maximum authorized by law, or
> is otherwise subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

As noted above, Browder has completed serving his 78-month term of

imprisonment.  Nevertheless, he still is "in custody" for the purposes of § 2255, and his

_____

[3] On April 4, 2016, this Court found that Browder violated the conditions of supervised
release imposed by Judge Arcara by possessing an unauthorized computer and
refusing to participate in sex offender treatment.  *See* Docket Items 85 & 95.  On April 7,
2016, this Court sentenced Browder to time served and ten years of supervised release
with special conditions.  *See* Docket Items 87, 89, & 96.  In June 2016, Browder again
was charged with violating his conditions of release by refusing to participate in sex
offender treatment.  *See* Docket Item 100.  That alleged violation is pending before this
Court.

petition is not moot, because his term of supervised release subjects him to substantial restraints not shared by the public generally. *See Forrestal v. United States*, 187 F. Supp. 2d 37, 39 (N.D.N.Y. 2002); *see also Carafas v. LaVallee,* 391 U.S. 234, 237-38 (1968) (even though underlying sentence had expired, attack on criminal conviction not moot due to "collateral consequences" of conviction).  Indeed, he has been incarcerated twice in connection with violations and a pending alleged violation of the conditions of supervised release originally imposed by Judge Arcara.

## II.    BROWDER'S GROUNDS FOR RELIEF

Browder asserts five grounds for relief in his petition.

Browder describes grounds one and two as "[p]rosecutorial misconduct, with procedural error"—or "procedural and factual error"—which "denied the defendant due process, and also caused and contributed to other iniquities."  Docket Item 65 at 2, 10. Ground one focuses on an issue involving Child Protective Services, *see id.* at 2-9, while ground two focuses on information received from European law enforcement agencies.  *See id.* at 10-15.  But in both grounds, Browder claims that there was a pervasive abuse of authority that led to misrepresentations about the facts of his case. For example, he disputes (1) an ICE agent's claim about a picture of his daughter, *see id.* at 2; (2) whether he accessed, or could have accessed, certain computer files, *see id.* at 7; (3) whether models depicted in some of the files actually were minors, *see id.*; and (4) whether referrals from European law enforcement agencies actually existed or were connected to him, *see id.* at 10.

In both grounds one and two, Browder also claims that as a result of the abuses of authority and misrepresentations, he lost due process rights; he faced unreasonable difficulty in mounting a defense; he was improperly burdened with the cost of pursuing reasonable bail; and his family suffered great loss, emotional trauma, and risk.  And Browder claims that those consequences, in turn, coerced him into pleading guilty. *See, e.g.*, *id.* at 2, 15.  Browder continues—or perhaps summarizes—this argument in ground four, claiming that his "[w]aiver of indictment and plea were unwilling."  *Id.* at 33 (describing his plea as "an attempt to relieve the suffering of the defendant's family, and to provide for a better defense at least for sentencing").  *Id.*

In ground three, Browder claims that he received ineffective assistance of counsel, as a result of which he "made unknowing waivers of and otherwise lost due process and other substantive rights, and suffered numerous other iniquities."  *Id.* at 16. Among other discrete complaints, Browder claims that his counsel failed to communicate with him, failed to conduct discovery, and failed to pursue a suppression issue.  *Id.* at 16-30.  Ground three also is related to grounds one, two, and four, to the extent Browder claims that the ineffective assistance of counsel caused or contributed to his pleading guilty against his will.

Thus, in grounds one through four, Browder includes several complaints about his attorney and government officials, but the main thrust of his claims is that he was "illegally detained while coercive pressures were applied and increased . . . until he believed he must plead guilty for the sole purpose of relieving those coercive pressures."  *Id.* at 41.

5

Finally, in ground five, Browder claims that Judge Arcara "committed procedural error in failing to find fact prior to sentencing." Docket Item 62 at 27.[4]  In other words, Browder claims that Judge Arcara "failed to comply with rule 32(i)(3)(B) by saying objections will not affect the sentence [but nevertheless] improperly accept[ing] [objected-to] matters, even announcing their influence at sentencing." *Id.*; *see also* Docket Item 65 at 32.

## III.   GROUNDS ONE, TWO, THREE, AND FOUR

In response to Browder's petition, the government argues that "by entering his guilty plea, Browder waived his right to appeal and/or collaterally attack any non-jurisdictional claims regarding the conduct of the Government's attorney (Ground One and Two) [i.e., relying on false or misrepresented evidence in detention hearing proffers], and his alleged unwillingness to waive indictment and enter a plea (Ground Four)." Docket Item 67 at 12-13.

Browder misconstrues the government's argument by assuming that it relies on the section of his plea agreement in which he waived his right to appeal his sentence. *See, e.g.*, Docket Item 70 at 7 ("The government claims that Grounds are waived by an appellate waiver in the plea agreement. . . .  The appellate waiver applies only to arguments of 'components of the sentence.'  Misconduct and due process are not 'components of the sentence.' "); *see also* Docket Item 65 at 30 ("It was and still is the

---

[4] Ground five is a separately labeled "Ground" in the appendices to Browder's initial petition, Docket Item 62 at 27, but not in Browder's later briefing, which was intended to be a "complete replacement" for those appendices. Docket Item 65 at 1. Nevertheless, in his later briefing Browder continues the arguments first made as part of ground five, *see, e.g., id.* at 32, so this Court will consider them.

defendant's understanding that the appellate waiver (part VI of the Agreement) affects precisely what it says it affects in plain and unmistakable English: 'any component of a sentence imposed by the court' . . . .  It is not possible within the language that for example 'the finding of fact' or 'the conviction' are 'components of the sentence.' "). Browder is correct that section VI of his plea agreement explicitly bars appealing or collaterally attacking only his "sentence."  *See United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001).  But that does not mean that Browder retained an unfettered right to challenge his conviction or withdraw his plea:  on the contrary, a knowing and voluntary guilty plea generally waives those rights.[5]

"A guilty plea is no mere formality, but a 'grave and solemn act.'"  *United States v. Arteca*, 411 F.3d 315, 319 (2d Cir. 2005) (quoting *United States v. Hyde*, 520 U.S. 670, 677 (1997)).  "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a *binding, final* judgment of guilt and a lawful sentence."  *United States v. Broce*, 488 U.S. 563, 569 (1989) (emphasis added). "[S]ociety has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice."  *United States v. Maher,* 108 F.3d 1513, 1529 (2d Cir. 1997) (internal quotation marks and alteration omitted).

---

[5] It also is worth noting that neither Browder's plea agreement nor his plea colloquy included any express reservation of his right to collaterally attack his conviction.

Under Rule 11 of the Federal Rules of Criminal Procedure, "[a]fter the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack." Fed. R. Crim. P. 11(e).  "[T]he circumstances under which a guilty plea may be attacked on collateral review," however, are "strictly limited." *Bousley v. United States*, 523 U.S. 614, 621 (1998).  "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984); *see Lebowitz v. United States*, 877 F.2d 207, 209 (2d Cir. 1989) ("The settled rule is that a defendant who knowingly and voluntarily enters a guilty plea waives all nonjurisdictional defects in the prior proceedings.").  Thus, "when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack." *Broce*, 488 U.S. at 569.

To Browder's credit, many of his arguments do relate to the central issue of whether his plea was "both counseled and voluntary."  As noted above, the overarching theme of grounds one through four of the petition is that, due to the failings of his counsel and the misconduct of the government, Browder was detained pending trial and thereby coerced to take a guilty plea.  Indeed, Browder asserts that his counsel "advised that the only remedy to the coercive effects of detention was to plead guilty."

8

Docket item 65 at 38.[6]  Nevertheless, Browder's arguments are without merit because the record demonstrates that Browder's plea was indeed "both counseled and voluntary" and that he well understood the consequences of the plea.

At the plea hearing, Judge Arcara meticulously complied with the requirements of Rule 11 of the Federal Rules of Criminal Procedure and gave Browder abundant opportunities to ask questions or obtain clarification regarding his rights.  For example, Judge Arcara set the stage by telling Browder:

> It's also very important that you understand what your rights are.  If at any time during the course of these proceedings there's something you do not understand, you want to ask me a question, you want to consult with your attorney, you want something more fully explained to you, you're free to do so.  You're encouraged to do so.
>
> It's not important that we get this over with as quickly as possible.  What's important is that I'm satisfied that you fully understand what your rights are.
>
> Do you understand that?

Docket Item 52[7] at 3.  Browder replied that he did.  *Id.*

---

[6] Browder does not provide much further detail on this assertion, but he indicates that it is based on the following somewhat cryptic email his father received from his counsel: "I believe that our efforts in the magistrate's court would be wasted... simply because it is too easy for him to pass the buck up to the district court judge.  But the district court judge won't have jurisdiction until he schedules a plea."  Docket Item 65 at 38 (ellipses in original, full email not attached).  It defies credulity that Browder's highly experienced counsel would have advised him to plead guilty solely as a way to address his pretrial detention.  Nevertheless, Browder still might have been entitled to the benefit of the doubt—and therefore a hearing—on this issue were it not for the detailed, careful, and complete record developed during the plea colloquy.  And what is more, Browder has not alleged that he received any misleading advice specifically concerning the finality of his guilty plea.

Additionally, as Browder's background and pro se submissions indicate, he is highly intelligent.  *See also id.* at 5 (Browder has degree in engineering from the State University of New York at Buffalo), 7 (the Court observing that the defendant is "obviously very intelligent.  He's alert, focused, attentive, clearly understands everything I'm saying . . . .").  So it is not surprising that the rest of the colloquy was not—like many plea colloquies—a one-sided exchange:

> THE COURT: Now, being found guilty of this offense may deprive you of some valuable civil rights.  You may lose the right to vote, right to hold public office, right to serve on a jury, right to possess a firearm, certain civil service-type jobs.  You may lose those rights.
>
> Do you understand that, sir?
>
> THE DEFENDANT: Somewhat, Your Honor.
>
> THE COURT: Okay. What don't you understand?
>
> THE DEFENDANT: Well, may I -- I understand that those things are possible, but I don't understand which are probable or certain.

*Id.* at 30-31.  Judge Arcara, Browder, and counsel then engaged in a colloquy addressing the defendant's questions.  *Id.* at 31-33.

On another occasion, Browder was asked if he understood that he would be sentenced to at least five years in prison if he committed certain criminal offenses "under Chapter 109A, 110 or 117 or Sections 1201 or 1591 of Title 18, United States Code," while on supervised release.  Docket Item 52 at 15.  Browder answered that he did, "except for the -- what offenses may be described under those chapters?"  *Id.*  In

---

[7] Docket Item 52 is the transcript of the waiver of indictment and plea hearing.  It also is attached to the government's response as Docket Item 67-3.

response, and to ensure that Browder's question would be fully answered, Judge Arcara

then took a recess so that the prosecutor could look up and define each of those

offenses.  *Id.* at 15-17.

Most importantly, Browder was informed of his right to contest the charges, and

Judge Arcara made it clear that if Browder pleaded guilty there would be no trial—that

the plea hearing was Browder's day in court.  *See, e.g.*, *id.* at 33-36.  At no time did

Browder even suggest that he had been coerced into pleading guilty, nor did he ask any

questions about that or raise any issue regarding his pretrial detention.  On the contrary,

Browder repeatedly indicated that his plea was voluntary and that he understood the

consequences of the plea:

>THE COURT: Is anyone forcing you to plead guilty?
>
>THE DEFENDANT: No.
>
>THE COURT: Anyone threaten you in any way?
>
>THE DEFENDANT: No.

*Id.* at 30.

>THE COURT: By entering a plea of guilty, if accepted by the Court, there
>will be no trial, you'll have waived your right to trial, as well as all the other
>rights we talked about.
>
>Do you understand that?
>
>THE DEFENDANT: Yes, Your Honor.
>
>THE COURT: You're doing this voluntarily, of your own free will, no one's
>forcing you to do this?
>
>You understand all the possible consequences?

THE DEFENDANT: I do, Your Honor.

*Id.* at 36; *see also id.* at 30 ("Now, do you understand the offense which you are pleading guilty to is a serious offense, and if accepted by the Court, you'll be found guilty? And there will be no appeal except as I indicated a few minutes ago.").

The transcript also explicitly belies Browder's claim that his experienced, well-respected attorney was ineffective.[8] First, Judge Arcara ensured that defense counsel had reviewed with his client the waiver of indictment, the plea agreement, and the rights that the defendant would be giving up by pleading guilty. *Id.* at 4-5. Then, Judge Arcara ensured that Browder was satisfied with his attorney:

THE COURT: Are you fully satisfied with the advice from counsel . . . ?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Any complaints?

THE DEFENDANT: No, Your Honor.

*Id.* at 5. And defense counsel later confirmed that he and the defendant had gone over the consequences of the plea "in detail," including the "collateral consequences, probably the most serious one is in the plea agreement which is sex offender registration, which has a calamitous effect on any individual." *Id.* at 32-33. In response to Judge Arcara's questions, Browder then indicated that he understood those consequences and that he had no "further questions" about them. *Id.* at 33.

---

[8] "[I]n order to satisfy the 'prejudice' requirement [of the *Strickland* test for ineffective assistance of counsel], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

So to the extent that Browder's arguments are based on the advice he received from his counsel about the plea or that pretrial detention coerced his plea, this Court finds those arguments to be without merit in light of the record in this case.  Browder received the due process to which he was entitled, he pleaded guilty voluntarily, and he clearly understood the consequences of his plea.  *See Hunter v. Bowersox*, 172 F.3d 1016, 1022 (8th Cir. 1999) "[Defendant's] statements at the plea hearings expressly refute the notion that his plea was being coerced . . . by his conditions of confinement."); *United States v. Yell*, 18 F.3d 581, 582-83 (8th Cir. 1994) (rejecting defendant's argument that pretrial detention coerced plea where "court carefully inquired into the voluntariness of [the] plea and determined after extensive questioning that appellant was competent to proceed, that he understood the rights he was waiving and that no threats or promises had been made to induce his plea"); *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) ("thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on [the defendant's] part before the plea was accepted," cured any claim that the defendant was prejudiced by erroneous "advice from [the defendant's] trial attorney [that allegedly] led to his misunderstanding of the consequences of his guilty plea."); *see also Hernandez*, 242 F.3d at 112 ("district court was entitled to rely upon the defendant's sworn statements, made in open court . . . , that he understood the consequences of his plea"); *United States v. Malik*, 615 F. App'x 911, 915 (10th Cir. 2015) (finding, based on defendant's "written pleadings . . . [and] oral statements at the time of the plea hearing[,] that his guilty pleas were entered knowingly and voluntarily," and rejecting claim that "the circumstances of his pretrial

13

detention [were] coercive"); *United States v. Jones*, 403 F.3d 817, 823 (6th Cir. 2005)

(rejecting claim that immediate release after 165 days of detention made plea bargain

"by its very nature coercive"); *Ramos v. Rogers*, 170 F.3d 560, 564-65 (6th Cir. 1999)

(rejecting ineffective assistance of counsel claim following guilty plea where trial "court's

proper colloquy can be said to have cured any misunderstanding [defendant] may have

had about the consequences of his plea").

Indeed, if Browder's plea can be attacked by assertions that it was coerced and

that his counsel was ineffective despite the evidence to the contrary in the plea hearing

transcript, then no guilty plea will ever be safe from attack by a defendant who has

second thoughts.  If that is so, then a guilty plea no longer will be a "grave and solemn

act," *Arteca*, 411 F.3d at 319, and society's "strong interest in the finality of guilty pleas"

will not be served.  *Maher*, 108 F.3d at 1529.

And to the extent that Browder's arguments are based on something other than

the validity of his plea,[9] such as pre-plea proceedings or the sufficiency of the evidence,

those arguments have been waived.  *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir.

1987) ("It is well settled that a defendant's plea of guilty admits all of the elements of a

formal criminal charge" and "waives all challenges to the prosecution except those

going to the court's jurisdiction.  Thus, after a judgment of conviction has been entered

upon the defendant's plea of guilty, the defendant may not raise nonjurisdictional

---

[9] In fact, as the government points out, "even the voluntariness and intelligence of a
guilty plea can be attacked on collateral review only if first challenged on direct review."
*Bousley*, 523 U.S. at 621."  Browder therefore procedurally defaulted, even on the issue
of the validity of his plea, by failing to raise it on direct appeal.  *See id.*  As a result, he
may raise it now only if he "can first demonstrate either 'cause' and actual 'prejudice,' or
that he is 'actually innocent.'"  *Id.* at 622 (internal citations omitted).

challenges . . . by collateral attack under § 2255.") (internal citations omitted); *see also*

*Broce*, *Mabry*, and *Lebowitz*, *supra*.

Likewise, to the extent that Browder claims that ineffective assistance of counsel

put him in a worse bargaining position going into the plea, that argument also has been

waived, as illustrated by *Parisi v. United States*, 529 F.3d 134 (2d Cir. 2008):

> Parisi's challenge, which rests on his assertion that an effective lawyer
> would have successfully obtained dismissal of his case, does not relate to
> the process by which Parisi agreed to plead guilty.  He urges us to allow
> his claim, despite its reliance on events prior to the plea negotiation rather
> than the negotiation itself, based on the theory that an effective lawyer
> would have changed Parisi's strategic bargaining position pre-plea.  Parisi
> would have this Court turn its gaze away from the plea process and
> toward the multitude of ways in which pre-plea events might reduce the
> strength of the defense and worsen the defendant's bargaining power
> vis-à-vis the prosecutor.  We decline that invitation.

529 F.3d at 138.  Indeed, "[e]verything that occurs prior to a guilty plea or entry into a

plea agreement informs the defendant's decision to accept or reject the agreement."  *Id.*

So, "challenging the attorney's role in shaping the defendant's bargaining position

cannot avoid the waiver [of a defendant's rights as a result of the plea]," in contrast to

"challenging the attorney's *advice* about that bargaining position, by connecting the

knowing and voluntary nature of the defendant's plea decision with the attorney's

conduct."  *Id.* at 138-39.

## IV.   GROUND FIVE

In ground five, Browder argues that the sentencing judge "committed procedural

error in failing to find fact prior to sentencing."  Docket Item 62 at 27.  But in the plea

agreement, Browder waived "the right to appeal and collaterally attack any component

15

of a sentence imposed by the Court which falls within or is less than the sentencing

range [agreed upon by the parties], *notwithstanding the manner in which the Court*

*determines the sentence.*"  Docket Item 14 at 9 (emphasis added).  And the Second

Circuit already has found that waiver to be voluntary and enforceable.  *See Browder*,

499 F. App'x at 75.  Ground five therefore lacks merit.

## V.    OTHER PENDING MOTIONS

Browder also made several other motions (apart from those made recently in

connection with proceedings on the alleged violation of supervised release), which are

pending before this Court.

### 1.    Motion to Appoint Counsel

As noted above, Browder filed an "Emergency Application for Appointment of

Counsel" on January 4, 2016.  Docket Item 79.  The Court notes that Browder has been

provided with counsel in connection with the supervised release violation proceedings.

To the extent that the application seeks counsel apart from that or in connection with the

§ 2255 motion, the application is denied.

 "A motion under § 2255 to vacate, set aside, or correct a sentence is not part of

the original criminal proceeding; it is an independent civil suit."  *Rauter v. United States*,

871 F.2d 693, 695 (7th Cir. 1989).  "Because it is civil in nature, a petitioner under

§ 2255 does not have a constitutional right to counsel."  *Id.*  If a court schedules an

evidentiary hearing, Rule 8(c) of the Rules Governing Section 2255 Proceedings

requires the appointment of counsel.  Otherwise, a court has discretion to appoint

counsel under 18 U.S.C. § 3006A.  For the reasons set forth above as to why the

petition lacks merit, as well as because of Browder's proven ability to articulate his claims, this Court declines to appoint counsel.

### 2. Motion to Unseal

Browder moved to unseal "the record of 09-m-2159." Docket Item 71 at 1. That is the docket number assigned to the application and affidavit filed to obtain an October 9, 2009 search warrant for Browder's home. At the time the application and affidavit were presented to the magistrate judge, law enforcement requested that they be sealed, and Magistrate Judge Hugh B. Scott granted that request. Within 14 days of the date of this order, the government is ordered to show cause why copies of the documents associated with 09-m-2159, the application, affidavit, search warrant and inventory, should not be provided to the defendant.[10]

### 3. Motion for Transcript

Browder moved "the Court to produce and provide a transcript of events in Court that preceded the [detention] hearing of 25 March 2010." Docket Item 71 at 3. The transcript of that hearing has been available on PACER since December 2012. *See* Docket Item 53. Browder, however, seems to seek a transcript of off-the-record remarks prior to the hearing: "All parties were present, and the Magistrate was seated, for substantive conduct of hearing matters prior to the nominal beginning of the hearing, so presumably an audio recording exists." *Id.* There is an audio recording from that day, but the entirety of the more-than-hour-long recording is reflected in the 47-page

---

[10] The Court notes that these documents would have been of no use to Browder in connection with his § 2255 motion due to the rationale behind this Court's decision as set forth above.

transcript filed as Docket Item 53 (beginning with "good mornings" between counsel and

Judge Schroeder).  Nothing further is available.  Therefore, the motion is denied as

moot.  Additionally, to the extent that Browder seeks an existing transcript, such as a

hard copy of Docket Item 53, the motion is denied on the basis that the transcript is not

needed to decide the issues presented in the § 2255 motion.  *See* 28 U.S.C. § 753(f);

*United States v. Turner*, 2016 WL 5887760, at *2 (S.D. Miss. Oct. 7, 2016).

### 4.     Motion to Docket Notice of Appeal

Browder moved "the Court to recognize and to take action on a properly and

timely submitted Notice of Appeal."  Docket Item 71 at 2.  This docketing issue

apparently was resolved, *see* Docket Items 73 & 84, but there is no order disposing of

the motion.  The motion hereby is denied as moot.

### 5.     Motion to Amend/Correct

Docket Item 71 apparently contained three motions but was docketed as a single

document.  Out of concern that "two of those three items may be neglected," Browder

moved for the record to "reflect three separate entries."  Docket Item 72.  The docket

reflects a correction on January 7, 2015, and all three motions are addressed above, so

this motion is denied as moot.

### 6.     Motion for Expedience

Based on the issuance of this decision, Browder's motion for expedience, *see*

Docket Item 72, also is denied as moot.

**CONCLUSION**

For the reasons set forth above, Browder's motion to vacate his conviction (Docket Item 62) is DENIED.  His petition in W.D.N.Y. Docket No. 14-cv-17 is DISMISSED, and the Clerk of Court is directed to close that case.  Additionally, the motions contained in Docket Items 71, 72, and 79 are terminated in accordance with this decision.

SO ORDERED.


DATED:        January 20, 2017
              Buffalo, New York

                                        *s/Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE