UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

BRIAN S. BROWDER,                                     10-CR-263
                                                                 DECISION AND ORDER
          Defendant.

---

       Brian S. Browder pled guilty to possessing child pornography, and on May 10, 2011, Judge Richard J. Arcara sentenced him to 78 months of imprisonment along with 10 years of supervised release. One condition of supervised release imposed by Judge Arcara required Browder "to enroll, attend, and participate in mental health intervention specifically designed for the treatment of sexual offenders." *See United States v. Browder*, 866 F.3d 504, 507 n.4 (2d Cir. 2017). In addition, Judge Arcara ordered that

> [t]he defendant shall participate in the Computer/Internet Monitoring Program administered by the U.S. Probation Office. The defendant must provide the U.S. Probation Office advance notification of any computer(s), automated service(s), or connected device(s) that he will use during the term of supervision. Such computer or computers will be subject to monitoring by the U.S. Probation Office, consistent with the computer monitoring policy then in effect by the probation office. In accordance with the Second Circuit's decision, *United States v. Lifshitz*, 269 [369] F.3d 173 (2d Cir. 2004), at footnote 11, and in light of the changing technology of computer monitoring techniques, *the Court finds it prudent to delay the determination of the specific terms of the condition and computer monitoring policy until the defendant's supervised release commences.*

*See id.* at 509 (emphasis and alteration in original).

       After Browder's release in 2015, this case was transferred from Judge Arcara to the undersigned. In March 2016, the Probation Office filed a violation petition, charging that Browder refused to sign an agreement enabling him to receive the counseling that

Judge Arcara had ordered and that he also had not complied with the computer monitoring condition. At the conclusion of a violation hearing, this Court found that the two violations had been proven by a preponderance of the evidence, sentenced Browder to time served, and reinstated the same term and conditions of supervised release that had been imposed by Judge Arcara.

On appeal, the Second Circuit reversed in part and affirmed in part. The court reversed the finding that Browder had violated the condition requiring him to obtain treatment, concluding that it was reasonable for Browder to refuse to sign the treatment agreement. The court noted that the agreement required Browder to obtain permission or approval from his probation officer and his treatment provider before having contact with ***anyone*** under the age of seventeen, while the condition imposed by Judge Arcara explicitly excluded Browder's children from the minors whom Browder could not contact without permission. Because the approval requirement in the treatment contract was more onerous than that imposed by Judge Arcara, the Second Circuit ruled that this Court erred in finding a violation when Browder reasonably refused to sign that contract.

The Second Circuit affirmed the finding that Browder violated the computer monitoring condition. But the court instructed that because Judge Arcara had deferred the details of the monitoring condition until after Browder was released and this Court never revisited the issue, this Court should "review the computer monitoring condition of supervised release" and "re-state the terms" of that condition "with greater specificity." *Id.* at 513.

On remand from the Second Circuit, this Court asked for input from the parties. On December 27, 2017, both sides submitted papers addressing the computer

2

monitoring issue, and on January 2, 2018, this Court heard oral argument. This decision follows the reversal on the treatment condition as well as the direction of the Second Circuit to "re-state the terms of Browder's computer monitoring condition with greater specificity" and to conduct "such further proceedings . . . as may be appropriate." *Id.* at 514-15.

## **TREATMENT CONDITION**

Browder does not need permission to have contact with his own children, and he need not sign any treatment agreement requiring him to obtain such permission. Therefore, while the condition that Browder participate in mental health treatment remains, such treatment may not be contingent on his signing any agreement that forces him to obtain permission to have contact with his own children.

Because this Court's finding that Browder violated the computer monitoring condition was affirmed, and because the sentence imposed for both violations was time served, there is no reason to revisit that penalty. Moreover, this Court would have re-imposed the same conditions and term of supervised release even if the computer-monitoring violation were the only violation. Stated another way, this Court would have imposed the same penalty, and the same term and conditions of supervised release, only for the computer-monitoring violation that was affirmed. Therefore, the penalty and supervised release imposed are deemed to be only for the violation that was affirmed by the Second Circuit.

## **COMPUTER MONITORING**

The computer-monitoring condition that the Second Circuit directed this Court to revisit presents thornier issues. First, although Judge Arcara ordered that the Probation Office policy at the time of Browder's release from prison should provide the details of his monitoring, and although this Court intended to re-impose those same conditions, the Probation Office may no longer have such a policy. Indeed, Browder's new assigned counsel suggested at oral argument that there is no meaningful policy, and the probation officer present agreed. Docket Item 177 at 21. What is more, Browder's attorney objected to the current monitoring practice in which Browder's computer keystrokes are "captured" and his computer activity "recorded" for future review. *Id.* at 11-13. And he also objected to the condition that the defendant consent to the seizure and search of a computer or related device based on something less than reasonable suspicion. *Id.* at 29.

The latter objection is easy to resolve. Indeed, the government's suggested condition incorporates the concept of reasonable suspicion, albeit without using those very words:

> Upon such notification of impermissible/suspicious activity, you shall consent to and cooperate with unannounced examinations of any computer equipment and internet capable device owned or used by you. This examination should include, but is not limited to, retrieval and copying of all data from the computer(s), intranet capable device(s), storage media, and any internet or external peripherals, and may involve removal of such equipment for a more thorough inspection.

Docket Item 170 at 4. "[N]otification of impermissible/suspicious activity" necessarily gives rise to "reasonable suspicion." But to remove any doubt, this Court will graft those words on to the monitoring provision.

4

Browder's attorney also objects to the conditions permitting the Probation Office to monitor Browder's computer "consistent with the computer monitoring policy" in effect in the Probation Office. As noted above, counsel asserts that there is no current policy, something with which the probation officer present at the hearing agreed. Docket Item 177 at 21. And counsel argues that the current ***practice***—a third-party vendor, Remote.com, recording Browder's keystrokes and enabling probation to view Browder's computer activity remotely—violates his rights and intrudes on his privacy. *Id.* at 11-12.

Counsel is incorrect on both counts. First, while there may not be a detailed, written, technical policy of computer monitoring, there is a practice that provides at least a de facto policy. Indeed, the Second Circuit addressed that practice in some detail. The de facto policy includes the installation of software on Browder's computer that "may record ***any and all activity*** on [his] computer, ***including the capture of keystrokes***, application information, internet use history, email correspondence, and chat conversations." *Browder*, 866 F.3d at 507 (emphasis added). That monitoring is "performed by a third-party private company, Remote.com." *Id.* And Remote.com "notifies the Probation Office only if it detects 'contraband.'" *Id.* at 512.

The Second Circuit explicitly found that such monitoring was "reasonable," "'reasonably related' to the nature and circumstances of the offense and Browder's history and characteristics," and "'reasonably necessary' for the broad sentencing purposes indicated in U.S.S.G. § 5D1.3(b) and 18 U.S.C. § 3553(a)(2), including specific deterrence, public protection, and rehabilitation." *Id.* Moreover, the Second Circuit noted that because Remote.com notifies the Probation Office only if it detects contraband, the practice is "narrowly tailored." *Id.* As a result, the Second Circuit

5

concluded that "subjecting Browder to [such] computer monitoring conditions . . . was not an abuse of discretion." *Id*.

Those conditions were fleshed out further in the parties' submissions and at oral argument before this Court. Remote.com uses key words to search for reason to believe that Browder is using his computer for illicit purposes related to child pornography. Docket Item 177 at 6-7. The probation officer is notified if such a key word is used, and the probation officer then can remotely search the content of Browder's computer which has been recorded for that very purpose. *Id.* And the Court has since learned that Remote.com keeps all the computer content only for six months and then erases it. Docket Item 176 at 3.

Browder argues that capturing every keystroke and recording all activity is overbroad and an invasion of his privacy. But the Second Circuit found to the contrary in this very case, approving the practice noted above. *Compare* 866 F.3d at 507 (monitoring includes the "capture of keystrokes" and "record[ing] any and all activity" on the computer) *with id.* at 512 (finding the computer monitoring to be "reasonable," "narrowly tailored," and "not an abuse of discretion").

Browder also argues that because Remote.com and the Probation Office can access any computer activity remotely and at a whim, his Fourth Amendment rights are virtually unprotected. Docket Item 177 at 12-13. He suggests that giving the Probation Office unlimited access to the recorded vault of his computer activity affords him virtually no protection. *Id.* This Court disagrees.

First, the search of Browder's computer activity and keystrokes is circumscribed by the nature of the condition. The Probation Office and Remote.com are authorized to

6

search for contraband, not to willy-nilly read whatever they please. Indeed, the blood-test analogy from *United States v. Lifshitz*, 369 F.3d 173, 187 (2d Cir. 2004), demonstrates that data from the computer monitoring here is little different than blood drawn from a defendant in a drug case. The nurse who draws the blood, the probation officer who directs its testing, and the medical technician who tests it are authorized to look only for the presence of drugs. They conceivably could learn whether the defendant has diabetes or a sexually transmitted disease. But that would violate their charge and directive from the court. In the same way, the Probation Office and Remote.com conceivably could nose into Browder's text messages with his relatives or even his emails with his attorney. But that likewise would violate their charge and explicit directive from this Court.

What is more, capturing keystrokes and recording computer information is necessary to accomplish the monitoring. A Remote.com employee is not viewing Browder's computer activity in real time, nor is a probation officer available to search input and look for contraband as soon as the key-word search triggers a suspicion. The data must be recorded and preserved for a time for monitoring to be effective. And the six months that the information is kept is reasonable.

Finally, Browder argues that the Probation Office's forms include agreement terms that go beyond the conditions ordered by the Court. For example, the Computer Monitoring Program Participant Agreement requires Browder to agree to "the unannounced search and seizure of [his] computer" even without "reasonable suspicion to believe that there has been a violation of either law or a condition of supervised release." Docket Item 175 at 4. Likewise, although the condition imposed by the Court

7

covers "any computer(s) . . . that he will *use*," see Docket Item 151 at 4 (emphasis added), the Computer/Internet Data form requires information about any computer Browder **has access to**, Docket Item 174 at 6 (emphasis added); see Docket Item 175 at 4.

As the Second Circuit's decision on the treatment condition teaches, Browder cannot be forced to sign or abide by agreements that reach beyond the Court's ordered conditions. This Court agrees with Browder that he must provide information about only those computers he will use and not all those to which he has "access," whatever that means. Likewise, Browder is to permit the physical search and seizure of computer equipment on reasonable suspicion, as addressed above and as noted in the condition imposed today. And he may amend and initial the agreement language noted above consistent with this decision.

But the Probation Office's monitoring practice that comprises its de facto policy is otherwise appropriate. It bears repeating that the Second Circuit has approved this very practice. And this Court has added an explicit instruction to those monitoring Browder's computer: they are to avoid, as much as possible, reading any privileged or innocent material. *See infra* p. 9.

Of course, under these circumstances Browder's privacy somewhat depends on the professionalism and honesty of those monitoring him. But that is no different than for the defendants whose blood is taken for drug tests or for the participants in a wiretapped phone conversation. In each of those cases, the court circumscribes what the monitors may look for; in each, we rely on the good faith of those monitoring to do that and no more. Browder's objection thus threatens to circumvent the monitoring—of

8

blood, phone calls, computer usage, or other data evidencing illicit activity—necessary to investigate crimes and accomplish the purposes of sentencing and supervised release.

## **CONCLUSION**

In light of the above, the Court re-states the terms of Browder's computer monitoring condition with the following greater specificity:

> The defendant shall not use or possess any computer, data storage device, or any internet capable device unless the defendant participates in the Computer and Internet Monitoring Program (CIMP), or unless authorized by the Court or the U.S. Probation Office.  The defendant must provide the U.S. Probation Office advance notification of any computer(s), automated service(s), or connected device(s) that will be used during the term of supervision.  The U.S. Probation Office is authorized to install any application as necessary to surveil all activity on computer(s) or connected device(s) owned or used by the defendant.  The defendant will be required to pay the cost of monitoring services.  The U.S. Probation Office shall be notified via electronic transmission of impermissible/suspicious activity or communications occurring on such computer(s) or connected device(s), consistent with the computer monitoring policy in effect or the practice currently used by, and therefore the de facto policy of, the probation office.  As triggered by impermissible/suspicious activity, and based on reasonable suspicion, the defendant shall consent to and cooperate with unannounced examinations of any computer equipment owned or used by the defendant.  This examination shall include but is not limited to retrieval and copying of all data from the computer(s), connected device(s), storage media, and any internal or external peripherals, and may involve removal of such equipment for the purpose of conducting a more thorough inspection.  Any such monitoring or examinations shall be designed to avoid, as much as possible, reading any privileged information or any private material that is not illegal, reasonably likely to lead to illegal material, or evidence related to illegal activity.

In addition, the Court re-imposes the following special conditions of supervised release as revised to reflect guidance from the Second Circuit since those conditions were first imposed in 2011 by Judge Arcara:

> The defendant must participate in a sex offense-specific treatment program and follow the rules and regulations of that program. The probation officer will supervise the details of the defendant's participation in the program, including the selection of a provider and schedule. If inpatient treatment is recommended, however, court approval must be obtained unless the defendant consents. The defendant is not to leave treatment until complete or as ordered by the Court. The defendant is required to contribute to the cost of services rendered.
>
> The defendant shall not have deliberate contact with any child under 18 years of age, excluding his biological or adopted children, unless approved by the probation officer or by the Court. The defendant shall not loiter within 100 feet of school yards, playgrounds, arcades or other places primarily used by children under the age of 18. The Probation Office has the discretion to authorize the defendant to pick up his children from school or other functions; however, authorization must be obtained in advance from the Probation Office or alternatively from the Court.
>
> The defendant is prohibited from possessing or downloading any child pornography as defined in 18 U.S.C. §2256 as follows: Any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct. For the purposes of this special condition, "sexually explicit conduct" means actual or simulated:
>
> > (A) sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal, whether between persons of the same or opposite sex;
> > (B) bestiality;
> > (C) masturbation;
> > (D) sadistic or masochistic abuse; or
> > (E) lascivious exhibition of the genitals or pubic area of any person.
>
> In order to monitor the defendant's compliance with not buying or subscribing to online services that provide child pornography, the defendant shall provide the Probation Office with access to any requested personal and/or business financial information.

The defendant shall register with the state sex offender registration agency in any state where the defendant resides, is employed, carries on a vocation, or is a student, and shall provide proof of registration to the probation officer. The probation office is authorized to release the defendant's presentence report to the New York State Board of Examiners of Sex Offenders.

The defendant shall submit to a search of his/her person, property, vehicle, place of residence or any other property under his/her control, based upon reasonable suspicion, and permit confiscation of any evidence or contraband discovered.

The defendant is to participate in a mental health treatment program, including a mental health evaluation and any treatment recommended. The probation officer will supervise the details of any testing and treatment, including the selection of a provider and schedule. If inpatient treatment is recommended, however, it must be approved by the Court unless the defendant consents. The defendant is not to leave such treatment until completion or as ordered by the Court. While in treatment or taking psychotropic medication, the defendant shall abstain from the use of alcohol. The defendant is required to contribute to the cost of services rendered.

Re-sentencing on the April 2016 finding of a violation of the computer-monitoring condition of supervised release is scheduled for Tuesday, April 3, 2018, at 10:30 a.m.


SO ORDERED.


Dated:	March 14, 2018
	Buffalo, New York



	*s/Lawrence J. Vilardo*
	LAWRENCE J. VILARDO
	UNITED STATES DISTRICT JUDGE